IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SARA LONGENBERGER, :
    Plaintiff :
     : No. 4:17-cv-00588
    v. :
     : (Judge Kane)
WILLIAM MINER, et al., :
    Defendants :

## MEMORANDUM

This matter is before the Court on a motion to dismiss Plaintiff Sara Longenberger's amended complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendants William Miner, Darwin Tobias, III, and the City of Shamokin. (Doc. No. 28.) For the reasons provided herein, the Court will grant Defendants' motion to dismiss.

## I. BACKGROUND

This 42 U.S.C. §1983 action was initiated by Plaintiff on April 3, 2017 through the filing of a four-count complaint asserting claims of false arrest, defamation, and invasion of privacy against a swath of Defendants, including: the City of Shamokin; Chief of Police of the City of Shamokin Police Department, Darwin Tobias, III ("Tobias"); law enforcement officer with the City of Shamokin Police Department, William Miner ("Miner"); The News-Item, a newspaper serving the City of Shamokin; staff writer for The News-Item, Mark Gilger ("Gilger"); Scranton, Pennsylvania-based media conglomerate Shamrock Communications, Inc., and its affiliates[1] (collectively referred to herein as the "Shamrock Communications Defendants"); and Sample

---

[1] In addition to naming Shamrock Communications, Inc. as a Defendant in the caption of the complaint, Plaintiff listed the following affiliated entities she claimed controlled, owned, operated, or were responsible for alleged defamatory statements published in The News-Item: Times-Shamrock Communications, Inc., Shamrock Telecommunications, Inc., Times Shamrock, The Scranton Times, LP, The Times Partner, George V. Lynett, William R. Lynett, Cecelia L. Haggerty, and Edward J. Lynett, Jr.

1

News Group, LLC ("Sample News Group").  (Doc. No. 1.)  On April 7, 2017, Plaintiff filed an amended complaint as a matter of course, naming Sample Media-MSK, Inc. ("Sample Media-MSK"), as an additional Defendant.  (Doc. No. 3.)  On May 4, 2017, the Shamrock Communications Defendants filed an answer and affirmative defenses to the amended complaint.  (Doc. No. 7.)  Thereafter, Plaintiff voluntarily dismissed the Shamrock Communications Defendants from the action upon discovering that Sample Media-MSK had acquired The News-Item from the Shamrock Communications Defendants prior to the events giving rise to the lawsuit.  (See Doc. Nos. 8, 9, 10, 11, 12, 13.)  Accordingly, the Defendants remaining in this action are Defendants Miner, Tobias, the City of Shamokin, The News-Item, Mark Gilger, Sample News Group, and Sample Media-MSK.

The allegations forming the basis of Plaintiff's amended complaint stem from criminal theft charges instituted against Plaintiff in connection with a dispute over the legal ownership of a Jack Russell Terrier and Pug mix named Tootsie Roll. Tootsie Roll was originally purchased for Nancy Madden ("Ms. Madden"), by her daughter and the eventual executrix to her estate, Bridgette McGivern ("Ms. McGivern").  (Doc. No. 3 ¶¶ 37-38.)  Tootsie Roll remained with Ms. Madden until Ms. Madden's death on December 26, 2015, at which time Ms. McGivern gifted Tootsie Roll to Chelsea Bensinger ("Ms. Bensinger").  (Id. ¶ 39.)  According to the amended complaint, Plaintiff eventually took possession of Tootsie Roll after Ms. Bensinger proved unable to care for him.  (Id. at ¶ 40.)  Plaintiff asserts that the transfer of ownership was memorialized in a handwritten agreement with Ms. McGivern dated February 6, 2016, wherein Ms. McGivern conditioned the "relinquish[ment] [of her] ownership rights" to Tootsie Roll on a right of first refusal to reclaim Tootsie Roll in the event Plaintiff sought to rehouse him.  (Doc. No. 3-1 at 1.)  The affidavit, attached as an exhibit to Plaintiff's amended complaint, provides:

> I, Bridgette McGivern, hereby relinquish ownership rights of license[d] dog #6545-Northumberland County to Sara Longenberger of 226 School St. Natalie, PA 17856. If dog is to be replaced to another home, Sara Longenberger agrees to contact me so it is agreed upon and I, Bridgette McGivern will be asked as first choice to take dog back into my ownership.
>
> Dog is male, jack Russell/pug mix that I purchased in Boyerstown, PA for my deceased mother, Nancy Madden in 2015. Mother date of death 12-26-15.

(Doc. No. 3-1 at 1.)

Plaintiff claims that despite her arrangement with Ms. McGivern, she was accused of and ultimately arrested for stealing Tootsie Roll. (Doc. No. 3 ¶ 43.) The affidavit of probable cause and corresponding criminal complaint prepared by arresting officer Defendant Miner, attached as an exhibit to the amended complaint, details that Defendant Miner was assigned to investigate an incident reported by an AREA Services Inc. ("AREA Services"), employee who informed police that on or about January 30, 2016, Plaintiff unlawfully took Tootsie Roll, along with his toys, bed, and food, from the AREA Services station where he had been residing for approximately one month. (Doc. No. 3-2 at 3.) The affidavit of probable cause summarizes the employee's account of how Tootsie Roll came into the AREA Services station's possession:

> [The employee] said that [Ms.] BENSINGER was working on the ambulance with a partner on December 26, 2015. [The employee] said the dog was given to [Ms.] BENSINGER by a [Ms.] McGivern. [Ms.] BENSINGER took the dog and cage that was provided and took it home. [Ms.] BENSINGER was unable to keep the dog at home so [she] brought the dog back to AREA Services. AREA Services then took possession of the dog and decided to kept it as a station dog. [The employee] provided information that they had the dog registered to them through a microchip. [The employee] also provided a license that was obtained for the dog thru Northumberland County. [The employee] also showed and provided a patient chart of the dog that was taken to St. Francis Animal Clinic for a health exam and microchip.

(Doc. No. 3-2 at 3.)

The affidavit further provides that an officer initially contacted Plaintiff by telephone to question her about the reported incident, and was informed by Plaintiff at that time that she did

take the dog from the AREA Services station and had "been in contact with the person who initially gave them the dog." (Doc. No. 3-2 at 3.) Following the telephone interview, officers visited Plaintiff at her home in an effort to retrieve the dog and return it to AREA Services. (Id.) However, Plaintiff refused to surrender Tootsie Roll to the officers. (Id.) The affidavit of probable cause recites that, during this exchange, Plaintiff explained to the officers that she took Tootsie Roll only after overhearing two Emergency Medical Technicians employed with AREA Services threatening to harm the dog, and further notified the officers that Ms. McGivern would be "coming to her residence later to look at the dog." (Id.) The affidavit of probable cause provides that Defendant Miner briefly consulted with Defendant Tobias following his interview of Plaintiff, who instructed Defendant Miner to contact Plaintiff one final time "in an attempt to have the dog and property returned and avoid an arrest." (Id.) On February 10, 2016, Defendant Miner spoke with Plaintiff by telephone and advised her to return Tootsie Roll and the property to AREA Services to avoid arrest. (Id.) Plaintiff, again, communicated to Defendant Miner that she would not return Tootsie Roll to the AREA Services station. (Id.)

On February 18, 2016, Plaintiff was arrested and charged with two misdemeanor offenses. Specifically, Plaintiff was charged with theft by unlawful taking of moveable property in violation of 18 Pa. C.S.A. § 3921. The statute provides, in relevant part, that a "person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa. C.S.A. §3921. The police criminal complaint appended to Plaintiff's complaint avers in connection with that charge that, "[t]o wit; the [Defendant] did take a male dog (Jack Russell/Pug mix), dog cage, dog bed, dog to[y]s, and dog food from the owner, Bernie Rumberger, without permission and refused to return the dog and listed items. Approximate total value of $500.00 more or less." (Doc. No. 3-2 at 2.) Plaintiff

4

was also charged with receiving stolen property in violation of 18 Pa. C.S.A. § 3925, which makes it an offense to "intentionally receive[ ], retain[ ], or dispose[ ] of movable property of another knowing that it has been stolen, or believe that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa. C.S.A. §3925. As it relates to that charge, the criminal complaint alleges that, "[t]o wit; the [Defendant] did take a male dog (Jack/Russell/Pug mix), dog cage, dog bed, dog to[y]s, and dog food, from the owner, Bernie Rumberger, without permission and refused to return the dog and listed items. Approximate total value of $500.00 more or less." (Doc. No. 3-2 at 2.) A preliminary hearing was held on April 5, 2016 before Magisterial District Judge John Gembic. Commw. of Pa. v. Sara Ann Longenberger, MJ-08303-CR-0000070-2016. At the conclusion of the preliminary hearing, it was determined that sufficient probable cause existed to have the case bound over to the County Court of Common Pleas of Northumberland County for further proceedings. Id. Those charges, however, were eventually dropped,[2] precipitating the filing of this civil action. (Doc. No. 3-3 at 1.)

On September 1, 2017, Defendants Miner, Tobias, and the City of Shamokin filed the instant motion to dismiss Counts I and II of the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 28), together with a supporting brief and 156 pages of

---

[2] In an order dated November 18, 2016, the Court of Common Pleas of Northumberland County dismissed all charges against Plaintiff. (Doc. No. 3-3 at 1.) As to the theft by unlawful taking charge, the court found that there was no clear evidence that Plaintiff intended to deprive the legal owner, the Estate of Ms. Madden, of her property, and reasoned that the AREA Services station was only a putative owner. As to the receiving stolen property charge, the court determined that there was no clear evidence that Plaintiff unlawfully took the dog from its legal owner, the Estate of Ms. Madden. (Doc. No. 3-3 at 1.)

corresponding exhibits (Doc. No. 29).[3] On September 1, 2017, Plaintiff filed a brief in opposition to Defendants' motion to dismiss. (Doc. No. 32.) On September 29, 2017, Defendants filed a reply brief. (Doc. No. 34.) Having been fully briefed, this matter is now ripe for disposition.

## II. LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is

---

[3] Count I asserts a violation of the Fourth and Fourteenth Amendments against moving Defendants Miner, Tobias and the City of Shamokin. Count II asserts a claim of false arrest against Defendants Miner, Tobias, and the City of Shamokin. The remaining Counts assert various state law claims against non-moving Defendants The News-Item, Mark Gilger, Sample News Group, and Sample Media-MSK.

facially plausible. Id. The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright &

Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004). [4] With this standard in mind, the Court turns the arguments articulated in Defendants' motion to dismiss.

## III. DISCUSSION

Defendants Miner, Tobias, and the City of Shamokin move to dismiss Counts I and II of the amended complaint asserted under 42 U.S.C. § 1983. Count I is captioned: "Violation of Fourth and Fourteenth Amendments of the Constitution of the United States of America." Count II sets forth a claim of false arrest.[5]

It appears that Counts I and II of the amended complaint advance nearly identical claims against the same Defendants and incorporate by reference the same set of operative facts. By the Court's reading of Counts I and II of the amended complaint, Plaintiff claims that her arrest and

---

[4] In addition to the amended complaint in this matter (Doc. No. 3), the Court has taken judicial notice of the exhibits attached to Plaintiff's amended complaint (Doc. Nos. 3-1-3.5), and Plaintiff's criminal docket sheets in Commonwealth of Pennsylvania v. Sara Ann Longenberger, MJ-08303-CR-0000070-2016, available through the Unified Judicial System of Pennsylvania Web Portal at: https://ujsportal.pacourts.us/DocketSheets/MDJReport.ashx?docketNumber=MJ-08303-CR-0000070-2016 and https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-49-CR-0000411-2016. See Fed. R. Evid. 201; Wilson v. McVey, 579 F. Supp. 2d 685, 688 (M.D. Pa. 2008). Consideration of the docket entries in Plaintiff's underlying criminal proceedings does not require conversion of the motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6) into a motion for summary judgment under Federal Rule of Civil Procedure 56. See Fed. R. Civ. P. 12(d). However, the Court has not taken judicial notice of the approximately 156 pages of exhibits attached to Defendants' motion to dismiss, as to do so would require conversion of the motion to dismiss into a motion for summary judgment. Those exhibits consist of: copies of Plaintiff's amended complaint together with the exhibits attached to Plaintiff's amended complaint (Doc. No. 29-1); the transcript of the preliminary hearing before Magisterial District Judge John Gembic (Doc. No. 29-2); the patient chart for Tootsie Roll from St. Francis Animal Clinic (Doc. No. 29-3 at 2); the criminal complaint signed and dated by the issuing authority, Magisterial District Judge John Gembic (Doc. No. 29-4 at 6-10); the bail bond (Doc. No. 29-4 at 11-12); text messages sent between Ms. Bensinger and Ms. McGivern (Doc. No. 29-4); witness statements (Doc. No. 29-5); and various motion papers and orders filed in the underlying criminal action (Doc. No. 29-6).

[5] It is unclear from the amended complaint whether Count II is grounded on a violation of federal or state law. Thus, the Court assumes for purposes of its analysis that Count II asserts a cause of action under 42 U.S.C. §1983.

8

detainment by Defendants on misdemeanor theft charges constitute a violation of her Fourth Amendment right to be free from an unreasonable seizure and a violation of her Fourteenth Amendment right to due process. (See Doc. No. 3 at 8 ("The Defendants' conduct, as more fully explained above, amounted to an unreasonable seizure and detention in violation of the Fourth Amendment of the United States Constitution and deprived the Plaintiff of her Due Process rights under the Fourteenth Amendment to the United States Constitution."), 10 ("The individual police Defendant William Miner arrested the Plaintiff without probable cause and detained the Plaintiff unlawfully.")). Thus, the Court addresses Counts I and II pari passu.[6]

### A. FALSE ARREST CLAIM AGAINST DEFENDANT TOBIAS

As an initial matter, the Court observes that the amended complaint is entirely devoid of factual allegations establishing Defendant Tobias's personal involvement in the events or occurrences underlying Plaintiff's Section 1983 false arrest claim. In order to prevail under Section 1983, a plaintiff must meet a threshold requirement of alleging facts demonstrating a defendant's personal involvement in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual

---

[6] A claim of false arrest/illegal seizure originates from the Fourth Amendment's proscription against unreasonable seizures, but may be redressed under Section 1983. Specifically, the Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const., Amendment IV. The Fourth Amendment, in turn, is applicable to the States through the Fourteenth Amendment. Baker v. McCollan, 443 U.S. 137, 142 (1979). "[T]he Fourth Amendment, not the Fourteenth Amendment, . . . is the proper vehicle for addressing any unlawful pretrial deprivations of liberty incidental to criminal proceedings . . . . This doctrine, also known as the explicit source rule, is derived from the [United States] Supreme Court's decision in Albright v. Oliver, 510 U.S. 266 (1994)." Meketa v. Kamoie, 955 F. Supp. 2d 345, 365 (M.D. Pa. 2013) (citation omitted). As it is clear from the amended complaint that Plaintiff's claims are predicated on allegations of an unlawful arrest, the Court must analyze such allegations "through the prism of the Fourth and not the Fourteenth Amendment." Id.

knowledge and acquiescence, however, must be made with appropriate particularity." Id. Allegations that contemplate the imposition of liability based on respondeat superior are simply insufficient for purposes of establishing a defendant's personal involvement in the purported violation of plaintiff's federal civil rights. Id. Here, the publically available docket of criminal proceedings against Plaintiff in the state magisterial district court serving Northumberland County identifies Defendant Miner as the arresting officer. As it is apparent that Plaintiff attempts to hold Defendant Tobias personally culpable for the alleged acts of misconduct based solely on his supervisory status, the Court finds dismissal of Defendant Tobias from this action to be appropriate in light of Plaintiff's failure to set forth factual allegations demonstrating this Defendant's personal involvement in the alleged unconstitutional acts giving rise to this action. Accordingly, the Court will grant Defendants' motion to dismiss Defendant Tobias from this action.

### B. FALSE ARREST CLAIM AGAINST DEFENDANT MINER

As Defendants correctly argue, Plaintiff has also failed to state a claim of false arrest against Defendant Miner. The lynchpin of a Fourth Amendment false arrest/illegal seizure claim is the absence of probable cause. Indeed, to state a claim for false arrest, the plaintiff must plead adequate facts from which a reasonable inference could be drawn that an arrest was made without probable cause. Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir.1995). Probable cause does not "require the same type of specific evidence of each element of the offense as would support a conviction." Adams v. Williams, 407 U.S. 143, 149

10

(1972). Rather, in making a probable cause determination, a police officer is authorized to weigh the evidence and make credibility determinations, even if those decisions later prove incorrect. Eckman v. Lancaster City, 742 F. Supp. 2d 638, 650 (E.D. Pa. 2010) aff'd, 515 F. App'x 93 (3d Cir. 2013) and aff'd, 529 F. App'x 185 (3d Cir. 2013) (citing Wright v. City of Phila., 409 F.3d 595, 603 (3d Cir. 2005) (noting that the evidentiary standard for probable cause is "significantly lower than the standard . . . required for conviction")). Moreover, "[t]he validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." Michigan v. DeFillippo, 443 U.S. 31, 36 (1979).

Where an arrest is made pursuant to a facially valid arrest warrant issued by a magisterial district judge,[7] the probable cause inquiry is twofold. Dempsey v. Bucknell Univ., 834 F.3d 457, 469 (3d Cir. 2016). First, the plaintiff must allege that the officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant." Id. (citing Wilson, 212 F.3d at 786-87). Second, plaintiff must allege facts that allow for an inference that "such statements or omissions [were] material, or necessary, to the finding of probable cause." Id. at 787 (citation omitted); Mitchell v. Obenski, 134 F. App'x 548, 551 (3d Cir. 2005) ("[T]he fact that a District Justice signed the warrant entitles Obenski to a presumption of reasonableness that can only be overcome by allegations of

---

[7] Notably, while Plaintiff indicates in her brief in opposition to Defendants' motion to dismiss that she was arrested pursuant to a warrant (see Doc. No. 32 at 7 ("The warrant at issue did not provide probable cause to arrest [Plaintiff]")), the publicly available state court docket indicates that a criminal complaint was filed on February 18, 2016, a first class summons was issued on February 19, 2016, and the summons was accepted on March 11, 2016. Thereafter, a $5000 unsecured bail was posted on April 20, 2016. In light of these docket entries, a question arises as to whether Plaintiff was arrested pursuant to a warrant, as it does not appear from the state court docket that Plaintiff was ever formally arrested. Commw. of Pa. v. Sara Ann Longenberger, MJ-08303-CR-0000070-2016.

deliberate falsehood or of reckless disregard for the truth, which must be accompanied by specific proof.") (citation and quotation marks omitted). Omissions are made with reckless disregard if an officer withholds a fact in his ken that "[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know." Id. (citation omitted).

Applied here, the Court finds that the amended complaint is devoid of sufficient factual averments from which a reasonable inference could be drawn that Defendant Miner lacked probable cause to arrest Plaintiff on theft-related charges. Conspicuously absent from the amended complaint is any challenge to the validity of the affidavit of probable cause prepared by Defendant Miner. Rather, Plaintiff merely avers that she was arrested despite the explanation she gave to police that "she had been given the dog by [Ms.] McGivern" (Doc. No. 3 at 43), and despite the existence of a handwritten affidavit from Ms. McGivern dated February 6, 2016, relinquishing her ownership interest in Tootsie Roll to Plaintiff. Plaintiff's brief in opposition to Defendants' motion to dismiss, however, sheds further light on her claims. In her oppositional brief, Plaintiff contends, for the first time, that Defendants recklessly omitted potentially exculpatory information concerning the ownership of Tootsie Roll from the affidavit of probable cause.[8] Specifically, Plaintiff argues that:

> In order for [Defendants] to have had a reasonable belief that [Plaintiff] committed the alleged crimes, they would have had to have first obtained information from the lawful owner, [Ms.] McGivern. However, they chose to ignore phone messages left by her at the City of Shamokin police station as well

---

[8] Plaintiff's brief in opposition to Defendants' motion to dismiss advances additional factual allegations that are not contained in the amended complaint. Moreover, the brief in opposition, in large part, is devoid of proper citations to the amended complaint. Plaintiff is reminded that a party may not amend or supplement a pleading by way of a brief in opposition to a motion to dismiss. Commw. of Pa. v. Zimmerman v. Pepsico, Inc., 836 F.2d 173 (3d Cir.1988) (citation omitted). Nevertheless, the Court has considered the allegations asserted in Plaintiff's brief in opposition in connection with its evaluation of her amended complaint to highlight what it has identified to be the glaring pleading deficiencies present in the amended complaint with respect to Plaintiff's Fourth Amendment false arrest claim.

> as the letter she signed on February 6, 2016 relinquishing ownership of the dog that was delivered to the police station by [Plaintiff] on February 7, 2017. The two officers also had an opportunity to speak with [Ms.] McGivern on the day they went to [Plaintiff's] residence to interview her but chose not to. [Defendant] Miner was informed by [Plaintiff] that, as Ms. Madden's daughter and the executrix of her estate, she was the true owner of the dog. Despite this, he never attempted to contact her to determine if [Plaintiff] had intentionally deprived [Ms.] McGivern of the animal.

(Doc. No. 32 at 8.)

These allegations simply do not allow the Court to infer that Defendant Miner lacked probable cause to effectuate Plaintiff's arrest. Plaintiff's challenge to the adequacy of the investigation conducted by Defendant Miner, alone, does not negate or otherwise call into question the validity of the affidavit of probable cause prepared by Defendant Miner as would support a Section 1983 claim of false arrest. See Wheeler v. Wheeler, 639 F. App'x 147, 150 (3d Cir. 2016) (upholding district court's dismissal of plaintiff's malicious prosecution claim for failure to state a claim on the basis that plaintiff's amended complaint, consisting of allegations that the defendant officer refused to interview the plaintiff and his wife following the altercation, visit the scene of the incident with the plaintiff, and review plaintiff's medical records, "revolve around how the investigation was conducted," and do not "suggest that [defendant] lacked probable cause to believe that [plaintiff] committed the offenses with which he was charged"); Mitchell v. Obenski, 134 F. App'x 548, 551 (3d Cir. 2005) (noting that an allegation that a "police investigation could have been more thorough does not vitiate probable cause"). It is well settled that an officer is "not required to undertake an exhaustive investigation in order to validate [a previous finding of] probable cause.'" Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 790 n. 8 (3d Cir. 2000) (explaining that the officer had probable cause to arrest based upon a credible report from a school principal who witnessed the alleged crime and noting that the officer was not required to interview every possible witness). Here, a detailed review of the

affidavit of probable cause attached to Plaintiff's amended complaint establishes that Defendant Miner had probable cause to arrest Plaintiff for "unlawfully tak[ing] or exercis[ing] unlawful control over, movable property of another with intent to deprive him thereof" from approximately January 30, 2017 to February 4, 2016 based upon: statements from the Plaintiff when officers visited her at her residence and spoke with her by phone, including her admission that she took the dog when she overheard EMT's threatening to harm him; witness statements; the police report filed by the AREA Services employee; and licensing and registration documents and the St. Francis Animal Clinic chart for Tootsie Roll provided by the AREA Services employee. (Doc. No. 3-2 at 3.)

Moreover, the potentially exculpatory evidence Plaintiff argues would have been revealed had the investigation been more exhaustive—namely, a later-acquired affidavit from Ms. McGivern relinquishing her ownership rights of Tootsie Roll to Plaintiff—at best, evidences Plaintiff's later attempt to bring herself into compliance with Pennsylvania law as it relates to the transfer of lifetime dog licenses. Indeed, Plaintiff does not address, nor can this Court discern from the amended complaint or briefing, the relevance of the February 6, 2016 letter supporting her claimed ownership of Tootsie Roll to a judicial officer's determination of probable cause to arrest Plaintiff for a theft that was alleged in the police criminal complaint to have occurred between January 30, 2016 and February 4, 2016.[9] (Doc. No. 3-2 at 1.)

---

[9] Moreover, Plaintiff's state court docket, of which this Court takes judicial notice, further undercuts Plaintiff's position that probable cause was lacking to arrest her. The state court docket reveals that, following a preliminary hearing conducted before Magisterial District Judge John Gembic, Plaintiff's prosecution was bound over for trial. Commonwealth of Pa. v. Sara Ann Longenberger, MJ-08303-CR-0000070-2016. The purpose of a preliminary hearing is to determine "whether there is a prima facie case that (1) an offense has been committed and (2) the defendant has committed it," which is "akin to the standard for probable cause, which requires only that a reasonable person believe that an offense has been . . . committed by the person . . . arrested." Wheeler, 639 F. App'x at 151 (citations omitted); see 234 Pa. Code § 542 (D).

14

In the absence of allegations that the arresting officer recklessly omitted certain material facts in the affidavit of probable cause concerning Plaintiff's claimed ownership of Tootsie Roll during the relevant period of January 30, 2016 to February 4, 2016, as would defeat the facially-valid affidavit of probable cause, Plaintiff's amended complaint cannot withstand the instant motion to dismiss. Accordingly, the Court will grant Defendants' motion to dismiss Counts I and II of Plaintiff's amended complaint without leave to amend, as it is clear that amendment would be futile.[10]

C. MUNICIPAL LIABILITY CLAIM AGAINST THE CITY OF SHAMOKIN

Nested within Counts I and II of Plaintiff's amended complaint is a municipal liability claim asserted against the City of Shamokin. However, Defendants have persuasively argued that Plaintiff fails to state a plausible municipal liability claim against the City of Shamokin.

"On its face, [Section] 1983 makes liable 'every person' who deprives another of civil rights under color of state law." Burns v. Reid, 500 U.S. 478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In Monell v. Department of Social Services, 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local

---

Although not conclusive, the magisterial district judge's "independent, contemporaneous judicial determination" to hold Plaintiff's case over for trial is "weighty evidence" that sufficient probable cause existed to arrest Plaintiff for the charged offenses. Wheeler, 639 F. App'x at 151; Doll v. Williams, No. 08–CV–675, 2009 WL 3103832, at *1 (M.D. Pa. Sept. 24, 2009) (Caldwell, J.) ("That a magisterial district judge determined that Pennsylvania had established a prima facie case may indeed be 'weighty evidence,' but it is not determinative."). While mindful of the weight to be afforded an independent probable cause determination made by a magisterial district judge, the Court cannot overlook that Plaintiff has not provided any factual allegations in the amended complaint that would arguably give this Court reason to question the rebuttable presumption created by the preliminary hearing, which found that probable cause existed to arrest her on theft charges.

[10] Defendants have moved to dismiss Counts I and II of the amended complaint on qualified immunity grounds. (Doc. No. 29 at 14-18.) The Court need not address Defendants' qualified immunity argument, however, as it has found that Plaintiff has failed to state a claim upon which relief can be granted.

15

governmental units are included among those "persons" against whom suit may be lodged under Section 1983. Id. at 690. A municipality or other local government entity may be liable under Section 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such a deprivation." Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986). A municipal entity cannot be held vicariously liable under Section 1983 for constitutional violations perpetrated by its agents or employees. Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 249 (3d Cir. 2007) ("Under Monell, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees.").

Rather, municipal liability is limited to those actions for which the municipality itself is actually responsible. Pembaur, 475 U.S. at 479. Liability attaches when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694 (1978). That is, the municipality is subject to liability in a Section 1983 action only to the extent it maintained an unconstitutional custom or policy that caused the constitutional violations alleged by Plaintiff. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Jiminez, 503 F.3d at 249.

To recover against a municipality under Section 1983, "[a] plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered." Losch v. Borough of Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984). Alternatively, "[a] municipality may be held liable under [Section] 1983 for failure to train, monitor, or supervise, [but] only where the plaintiff can 'identify a failure to

16

provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred.'" Watson v. Philadelphia Hous. Auth., 629 F. Supp. 2d 481, 487 (E.D. Pa. 2009) (quoting Gilles v. Davis, 427 F.3d 197, 207 n.7 (3d Cir. 2005)).

The amended complaint in this case does not identify any affirmative policy or custom adopted or promulgated by the City of Shamokin that would give rise to a municipal liability claim under Section 1983. Specifically, Plaintiff alleges as follows:

> It is believed that the City of Shamokin is liable to Plaintiff for her false arrest as a result of its failure to adequately train its police officers and as a result of a custom or policy of condoning the arrest of individuals without adequately investigation the allegations of a crime and without properly collecting tangible evidence before making arrests. It is believed and therefore averred that the City of Shamokin has a policy or custom of allowing police officers to arrest individuals without thoroughly investigating allegations. Further, the City of Shamokin has not implemented policies and procedures to guard against false arrest.

(Doc. No. 3 ¶ 35.)

Although Plaintiff alleges, in cursory fashion, that the City of Shamokin failed to adequately train their employees, Defendants Miner and Tobias, to properly determine probable cause, she does not point to any specific training, the absence of which can be said to have caused the alleged constitutional violations. Moreover, Plaintiff has failed to allege any facts from which a reasonable factfinder might infer actual or constructive knowledge by municipal policymakers of a previous pattern of similar constitutional violations, or of the allegedly inadequate training as would be required to impose Section 1983 liability on a municipality. See Colburn v. Upper Darby Twp., 838 F.2d 663, 672 (3d Cir. 1988); see also Oklahoma City v. Tuttle, 471 U.S. 808, 823–24 (1985) ("[A] single incident of unconstitutional activity is not

17

sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy . . . [that] can be attributed to a municipal policymaker."); Brown v. City of Pittsburgh, 586 F.3d 263, 292–93 (3d Cir. 2009) (noting that where no policy is explicitly recognized, "'more proof than the single incident will be necessary' to establish a causal connection between the incident and some municipal policy") (citation omitted).

More importantly, "for there to be municipal liability, there . . . must be a violation of the plaintiff's constitutional rights." Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst., 318 F.3d 473, 482 (3d Cir. 2003). Because Plaintiff has failed to state a federal civil rights claim against individual Defendants Miner and Tobias, she simply cannot establish a Monell municipal liability claim premised on a "single incident" theory of liability against the municipal Defendant, the City of Shamokin. See Startzell v. City of Phila., 533 F.3d 183, 204 (3d Cir. 2008). Accordingly, the Court will grant Defendant's motion to dismiss Plaintiff's Section 1983 claims against the City of Shamokin.

D. LEAVE TO AMEND

In civil rights cases, district courts must generally sua sponte extend plaintiffs an opportunity to amend the complaint before dismissal. Fletcher-Harlee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007). However, a district court can refuse to permit a curative amendment on grounds of bad faith, undue delay, prejudice, or futility. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Informed by this standard governing the amendment of pleadings, the Court finds that granting leave to amend Counts I and II of the amended complaint would be futile. Indeed, a liberal reading of the amended complaint, the exhibits offered in support thereof, and the brief in opposition to the motion to dismiss, reveals no set of

facts that could plausibly give rise to a viable claim for relief under Section 1983, even if further amendment were permitted. Accordingly, the Court will grant Defendant's motion to dismiss Counts I and II of the amended complaint with prejudice.

### E.     STATE LAW CLAIMS

The remaining counts asserted in Plaintiff's amended complaint contain state law claims of defamation, false light, and invasion of privacy. (Doc. No. 3 at 11-16.)  Where a district court has dismissed all claims over which it has original jurisdiction, as is the case here,  the Court may decline to exercise supplemental jurisdiction over the pendent state law claims.   28 U.S.C. § 1367(c)(3). The decision of whether the Court may exercise supplemental jurisdiction is one that should be based on "the values of judicial economy, convenience, fairness, and comity, Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). Ordinarily, when all federal law claims have been dismissed and only state-law claims remain, the balance of these factors indicates that these remaining claims properly belong in state court. Id.  In the absence of a viable federal claim, and finding nothing in the record to distinguish this case from the ordinary one, the Court finds that the balance of factors in this case "point[s] toward declining to exercise jurisdiction over the remaining state law claims." See Cohill, 484 U.S. at 350 n.7. Therefore, the Court will dismiss the state-law claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3).[11]

## IV.     CONCLUSION

Based upon the foregoing, the Court will grant Defendants William Miner, Darwin Tobias, III, and the City of Shamokin's motion to dismiss Counts I and II of Plaintiff Sara

---

[11] The Court notes that when a district court declines to exercise supplemental jurisdiction over state law claims, the statute of limitations is tolled while the federal suit is pending and for a period of 30 days after the suit is dismissed. 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."); see Hedges v. Musco, 204 F.3d 109, 123–24 (3d Cir. 2000).

19

Longenberger's amended complaint with prejudice, and will decline to exercise supplemental jurisdiction over the remaining state law claims. (Doc. No. 28.) An Order consistent with this Memorandum follows.